## Richmond.

### RISON, TRUSTEE, AND OTHERS v. MOON.

#### APRIL 25, 1895.

1. CHANCERY JURISDICTION—*Complete Relief—Mechanic's Lien.*—A court of equity, having taken jurisdiction of a suit in equity to enforce a mechanic's lien, and having the parties before it, should proceed to the determination of all the questions between them.

2. MECHANIC'S LIEN—*Sufficiency of Account.*—Where a gross sum has been agreed for repairs to or improvements on a building, an account which states the agreed sum, but omits credits which are known to the owner, but of which the contractor has not accurate information, is a sufficient compliance with the statute which requires "a true account" to be filed as the basis of a mechanic's lien, especially where no injury is done to the owner.

3. MECHANIC'S LIEN—*Uncompleted Work—Set-offs—Penalty or Forfeiture.*—In a suit in equity to enforce a mechanic's lien, where the contractor has not completed his work, the owner is entitled to set-off against the contractor's claim the sum which it would take to complete the contract, and any damages sustained by the owner by reason of the delay in the completion of the contract, and these *damages* will not be confined to a penalty or forfeiture stipulated for in the contract.

4. ARBITRATION—*Withdrawal from Submission—Damages.*—Either party may withdraw from an agreement to arbitrate an existing cause of action at any time before the award is made. The only remedy for the party aggrieved is a suit for damages for breach of the submission. The agreement to submit is no bar to a suit at law or in equity, and no foundation for a suit for specific performance.

Appeal from a decree of the Circuit Court of Fluvanna county, pronounced, by the judge of said court in vacation, May 23, 1890, in a suit in chancery wherein the appellee was the complainant, and the appellants and others were the defendants.

*Affirmed.*

This was a suit in chancery to enforce two mechanic's liens. No question was raised as to the sufficiency of one of the accounts. The other account, which was made the basis of a mechanic's lien, was as follows:

" A true account of the work done and materials furnished on and upon the Rivanna Mills, situated on the Rivanna river, in the county of Fluvanna, held and owned by John W. Rison as agent and trustee for his wife, Mrs. Sarah A. Rison.

" John W. Rison, trustee and agent for Mrs. Sarah A. Rison, his Wife,

" To E. Bateman, General Contractor, Dr.

" To 1 Climax smutter; 1 No. 3 purifier; 1 No. 3 bran-duster; 1 30-in. middlings mill and fixtures, complete; Bolting cloth for 1 reel for middlings duster, and making and fitting of same; to furnishing and putting up shafting, belting, gearing, and buckets, and completing so as to make capacity of mill 50 bbls. flour in 24 hours, of quality equal to any burr mill in Virginia, and to make 1 bbl. extra flour from 4 20-60 bushels wheat, weighing 60 lbs. per bushel; 1 Crowell wheel and gearing, in place and stead of the 30-in. Perfection wheel in contract, said Crowell wheel being, by agreement, accepted in place of other; 2 spindles and pinions; 2 inks and saddles; to furnishing shafting and machinery to replace that now in corn-mill to run two pr. corn-stones; to making connections with saw-mill—to-wit: One pulley on one of shafts, offered to be done as agreed, but offer refused by said Rison, and now again offered.

" All said work and material done and furnished at $1,200 on 5th November, 1886, and of which one-third, or $400, was to be paid 60 days thereafter, one-third in six months thereafter, and one-third in twelve months thereafter, and to be secured by negotiable notes.

"In consideration of the above facts, as general contractor for the aforesaid work and materials, the undersigned, E. Bate-

man, now hereby signifies his intention to claim the benefit of the mechanic's lien, provided by chapter 115 of the Code of Va., 1873, and the acts amendatory thereof.

"E. BATEMAN.

"January 31, 1887."

*Wm. B. Petit*, for the appellants.

1. The bill was filed for the enforcement of a contract which was confessedly broken by the plaintiff's assignor, and which, in fact, has never been completely performed by him. "If any particular of the contract remains unfulfilled, the entire contract is broken, and the party in default will not only be liable in damages, but may be precluded from enforcing the promises on the other side," is the language in which Hare on Contracts, p. 570, as quoted with approval by Judge Richardson, in *Reid* v. *Field*, 83 Va., 31-2, gives expression to a well-established rule of law.

No recovery can be had on a special contract without showing performance, and performance within the time limited. (*Emmons* v. *Slater*, 19 How. 239, and 22 How. 28-45.) And, if the work be subsequently done and accepted, a recovery can be had upon the principle of *quantum meruit* only, on which the defendant can be required to pay only to the extent he is truly benefited. "In such case," says the court, in *Dermott* v. *Jones*, 23 How. 220, the party in default "cannot recover the remuneration stipulated for in the contract; but, if the other party has derived any benefit from labor done, the law implies a promise to pay such remuneration *as the benefit conferred is really worth.*" An acceptance of the buildings, after the time, makes no difference. Still, there can be no recovery on the contract. (*Id.*)

2. The account filed was not *a true account.*

Bateman claims that he furnished all the materials called

for by the contract, except where something else was substituted, and he asserts a *lien* for $1,200; and yet, at that very time he knew that less than half that amount was due him. He knew that machinery charged for by him was furnished by appellants. He has failed to allow credit for this. How can such an account be a *true* account? The interest of the owner, and of creditors of and purchasers from him, imperatively demand that the statute which authorizes this summary and extraordinary mode of placing liens upon property should be strictly construed and strictly pursued; otherwise, the owner might be ruined by the loose and reckless, or false and fraudulent, conduct of a contractor, in asserting a lien for an amount largely in excess of what he was entitled to. These principles were announced in *Shackelford* v. *Beck*, 80 Va. 573, and have been codified in Sec. 2476 of the Code.

3. The court had no jurisdiction to maintain this suit till after the amount, if any, due the contractor, had been fixed by arbitration.

After there had been a disagreement between the parties about the work, it was agreed that the contractor should go on and complete the work as expeditiously as possible, and that, when completed, all matters of controversy between the parties growing out of the contract and work, including damages for the contractor's default in the non-completion thereof in the time limited, should be settled by arbitration and award.

The contractor was estopped from maintaining any action until the arbitration and award were had and made.

It may be conceded as law that after a cause of action has arisen, the parties cannot, by agreement to arbitrate, oust the courts of jurisdiction, because, as is said, it is contrary to public policy; yet, in the language of Lord Campbell, in *Scott* v. *Avery*, 5 House of Lords Cases, 811, p. 852, as quoted by Mr. Robinson, with evident approval, in 7 Rob. Prac. 487:

"What pretense can there be for saying that there is anything contrary to public policy in allowing parties to contract that they shall not be liable to any action until their liability has been ascertained by a domestic and private tribunal, upon which they themselves agree? Can the public be injured by it? It seemed to him that it would be a most inexpedient encroachment upon the liberty of the subject, if he were not allowed to enter into such a contract."

"The decision in *Scott* v. *Avery*," says Mr. Robinson, "has been recognized and acted on in the United States, as well as in England;" and he cites, among others, *Condon* v. *So. S. R. R.*, 14 Gratt. 314; *Horton* v. *Sayer*, 4 H. & N. 651, and gives a strong case—*Hemans* v. *Picciotto*, 1 Com. B. J. Scott, N. S., 646, 87 Eng. Com. L. The case of *Scott* v. *Avery*, is reported, also, in 8 W. H. & G. Excheq., 499, and 20 Eng. L. & Eq., 327. The whole discussion of this doctrine by Robinson (7 Rob. Pr., 485-8) is instructive and interesting. (See also 6 *Id.*, 317, 318, and 5 *Id.*, 254; *U. S.* v. *Robinson*, 9 Peters, 327; *Balt. & O. R. R.* v. *McCullough*, 12 Gratt. 595, 597; Morse on Arb. and Award, p. 93.)

Now, confessedly, Rison was under no obligation to pay anything on the 16th of August. The time had expired, and the work had not been done. The agreement that day made provided, substantially, that he should be liable, at the completion of the work, only so far as might be determined and fixed by arbitration and award. In other words, the arbitration was made a condition precedent to any liability.

4. But if the suit could be maintained at all, still appellants were entitled to damages for the losses sustained by them by being kept out of the use of their mill for nearly the whole of the wheat-grinding season. And although exact amounts could not be ascertained, it was the duty of the commissioner and of the court to allow for profits which might have been made. *Berryman* v. *Hillard*, 23 How. 149, 167; *C. L.*

*Asylum* v. *Flanagan*, 80 Va. 110. In *United States* v. *Smith*, 94 U. S. 214, it is said that the court must make its estimate of damages from the profits. It is next to impossible to show the "definite amount;" but this is no reason for not making a reasonable estimate of them from the facts and proofs.

*Thos. S. Martin*, for the appellee.

Cardwell, J., delivered the opinion of the court.

July 7, 1886, E. Bateman, agent for his wife, M. L. Bateman, through H. J. Wright, entered into a contract in writing with John W. Rison, trustee and agent for his wife, Sarah A. Rison, whereby Bateman undertook and agreed, under a penalty of $100, to furnish and put up into the Rivanna Mills in Fluvanna county, the property of Sarah A. Rison, certain machinery and other equipments minutely stated in the contract, and "to do all the work necessary to make 50 barrels of flour in 24 hours, the quality of which shall be up to the standard of any burr mill in the State of Virginia, guaranteeing a barrel of extra flour from four and one-third bushels of wheat that will weigh sixty pounds to the bushel;" the work to be completed within thirty days from date of the contract, and for which Bateman was to receive the gross sum of twelve hundred dollars—four hundred dollars in ninety days, four hundred dollars in six months, and four hundred dollars in twelve months from the completion of the contract; Rison to board Wright and the hands while working at the Rivanna mills, without charge. This contract was subsequently, by endorsement thereon, approved by E. Bateman and M. L. Bateman, his wife, and Sarah A. Rison, with slight modifications as to the date of the first payment of the contract price, and as to the time within which certain work on water wheel

and connections with saw-mill were to be completed, making the time as to the first payment sixty days, instead of ninety, from completion of the contract, and sixty days from date of contract, instead of thirty, within which to make the connections to saw-mill, etc., and negotiable notes to be given for the last two payments of the contract price.

August 12th following the date of the contract, only a part of the machinery had been put in the mill, and little or no work had been done by Bateman; whereupon Rison complained by letter to Bateman of the delay, and notified him of his (Rison's) intention to claim damages of $20 for each day from the date upon which the contract should have been completed, until completed, and about the 16th of August locked up the mill, and refused to let Bateman resume work, or take the machinery out of the mill that he had already put in. But, upon some understanding had between the parties, Bateman resumed work; the contract as modified remaining unchanged, except as to some of the machinery, which, at the request of Rison, was changed; he agreeing to buy such as he wished substituted for that specified in the contract, its cost to be deducted from the original gross contract price. The work continued until about November 5th following, when all the machinery had been put in, and the work completed, except as to a portion of it—the cost of completing the work then unfinished being, as shown by the testimony, from twenty-five to thirty dollars; and Rison then took charge of the mill, began to work it, and assumed to do the uncompleted work himself, which he afterwards did together with other work and additions not covered or contemplated by the contract.

December 3, 1886, W. J. Keller, who was a sub-contractor on this work, and on the 31st of January, 1887, E. Bateman, the general contractor, filed their accounts of the work done and materials furnished, sworn to, and with a statement and description of the Rivanna mills' property upon which they

claimed a mechanic's lien in pursuance of the statute, and caused notice thereof in writing to be at once served upon Rison, as trustee, and upon his wife, Sarah A. Rison. These accounts were duly recorded in the clerk's office of Fluvanna County Court, as required by the statute, the former for $206.80, and the latter for $1,200.

January 25, 1887, an agreement in writing was entered into between Bateman and Rison to refer the matters in controversy between them to arbitration, the arbitrators being afterwards chosen; but before an award was made, Bateman withdrew from the agreement and the arbitration failed. The liens taken out by Keller and Bateman were then assigned to J. L. Moon, appellee; whereupon Moon, as assignee, filed his bill in the Circuit Court of Fluvanna county to enforce them, making Rison and wife, E. Bateman and wife, and W. J. Keller parties defendant; to which bill, answers were filed by all the defendants except Keller; John W. Rison demurring and answering for himself and wife, and the latter also demurring and adopting the answer of her husband and trustee as her own. And on November 21, 1888, the Circuit Court of Fluvanna referred the cause to one of its commissioners, who was directed to take and report "the following accounts on the testimony then in the cause, or which might be taken on behalf of either party:

"First, an account showing what amount, if any, is due to the plaintiff;

" Second, what amount, if any, the defendants John W. Rison and wife, are entitled to as against E. Bateman and wife, or as against any claim established by the plaintiff as assignee of said E. Bateman and wife, or of W. J. Keller, by reason of any delay or failure on the part of said E. Bateman and wife in the execution of the work stipulated for in the contract filed with their bill;

" Third, an account showing the annual and fee-simple value

of the property in the proceedings mentioned, with all liens thereon and their priorities, if any."

A number of witnesses were examined on behalf of both the plaintiff and defendants Rison and wife, before and after this decree of reference, and on the 9th of April, 1890, A. E. King, the commissioner to whom the cause was referred, filed his report, sustaining the liens of Keller and Bateman on the Rivanna mills, and reporting that there was due to Moon, as assignee, by Rison and wife, $572.54, one-third of which was due at sixty days from the 5th of November, 1886, one-third at six months from said date, and the remaining third at twelve months from said date, each sum to bear interest from the date it was due, total due including interest to April 10, 1890, $671.

In the account "A" filed with this report, the commissioner allowed the full contract price, and deducted therefrom the cost of certain machinery purchased and paid for by Rison, the cost of the work omitted by Bateman, and the forfeiture under the contract of $100, and also some small sums paid by Rison to workmen on the mill, leaving the balance due, as stated, $572.54, with interest; the sum of $100 credited to Rison being allowed as covering all damages sustained by Rison by the delay in the completion of the work, no other or additional damages having been proved.

To this report a number of exceptions were filed by Rison and wife, and by the plaintiff, and on the 23d day of May, 1890, the cause having been submitted to the judge of Fluvanna Circuit Court for decision and decree in vacation, the judge made a decree overruling the demurrers to the bill and the exceptions to Commissioner King's report, and approved and confirmed the report, and further decreed that unless John W. Rison trustee, and Sarah A. Rison, his wife, or one of them, paid within forty days from the date of the decree, to Jacob L. Moon, the money with interest, as shown to be due

him by account "A" filed with Commissioner King's report, and the costs of Moon incurred in the prosecution of this suit, the sheriff of Fluvanna county should proceed, after notice prescribed by the decree, to rent out the Rivanna mills for the purpose of paying the amount due by Rison and wife. From this decree an appeal was allowed Rison and wife.

The assignments of error are five in number, the second of which is waived, and the remaining four will be considered in their order.

The first assignment of error is that the plaintiff could not recover in this suit because the bill does not allege a complete performance of the contract by Bateman. This suit was brought properly in a court of equity to enforce the mechanic's liens taken out by Keller and Bateman and assigned to Moon; and the court having taken jurisdiction of the case, should have done just what it appears it has done—proceeded to the determination of all the questions between the parties to the suit, according to their rights and the equities of the case. Hence this assignment of error cannot be maintained.

The third assignment of error is that Keller was a mere workman for daily wages, and not in any sense a sub-contractor, and that Bateman's lien acquired under the statute should not have been maintained, because the account filed therewith was not a true account. It is unnecessary to consider the Keller lien, as his claim had been paid off by Bateman through Moon, assignee, and Bateman's claim covered the entire amount of the original contract price. It is true that the statute, commonly known as the "mechanic's lien law," at the time that Bateman took out his lien, required that the account filed therewith should be "a true account;" and while it appears that the account filed by Bateman states truly the amount of the contract price, it omits to credit Rison with the cost of the machinery that he had purchased to substitute for some of the machinery specified in the contract, and some

other items that were afterwards allowed by the commissioner
in stating the account between Bateman and Rison.   But it
does not appear in the record that Bateman knew at the filing
of this account just what the credits were, or the amounts
thereof, that Rison was entitled to.   Hence it would seem
that the account made out and filed by him was as true an
account as he could, under the circumstances, have made;
and moreover, it does not appear that this failure by Bateman
to put the proper credits on the account has worked any in-
jury to Rison.   In the case of *Taylor* v. *Netherwood*, decided
by this court in January last, *ante* p. 88, where the account
filed by Netherwood only set out the specific amount in gross
for which Netherwood contracted to do the work and furnish
the material necessary therefor, it was held that the account
filed by him was sufficient.   The statute, under which Nether-
wood sued out his lien, required that the account should not
be "wilfully false," and the statute, formerly, as we have
seen, required that the account should be "a true account."
Very little difference, if any, in the requirement as to what
the account should be.   Where the account is substantially
correct, and especially where any inaccuracies or omissions,
do not work injury to the owner of the property, we think it
is sufficient; and this seems to be sustained by the weight of
authority.   *Taylor* v. *Netherwood*, and the cases there cited.

The fourth assignment of error is that no action could be
maintained on Bateman's claim until the arbitration and
award stipulated for was had and made.   It is well settled
that either party may withdraw from an agreement to arbi-
trate, made after a cause of action has arisen, and before the
award has been rendered, and that such an agreement is no
bar to suit at law or in equity, and no foundation for a decree
of specific performance.   *Corbin et als.* v. *Adams et als.*, 76
Va. 58; Morse on Arbitration, 79 and 90; *Tobey* v. *County
of Bristol et als.*, 3 Story 822.   The only remedy for the party

aggrieved is by an action for damages growing out of the breach of submission.    Morse on Arbitration, *supra*, 239.    It is contended, however, by appellants that one of the conditions upon which Bateman was allowed to resume work on the contract August 16, 1886, was that the matters of difference between them should be submitted, upon the completion of the work, to arbitration; but this is not sustained by the evidence.    Indeed, it is inconsistent with the position taken by Rison in his answer, wherein he only contends that the agreement to arbitrate was brought about January 25, 1887, the date of the agreement, by a proposal from Bateman to have all matters in dispute between them submitted to arbitration.

The fifth and last assignment of error is, in effect, that the Circuit Court should not have sustained Commissioner King's report, because the damages allowed Rison as a set off to Bateman's claim were inadequate.

The decree referring the cause to the commissioner, as we have seen, authorized him to enquire into every matter of fact necessary to establish what damages Rison was entitled to as an off-set to plaintiff's claim, and to settle the accounts between them according to the equities of the case; and quite a number of witnesses were examined.    The plaintiff, as Bateman's assignee, was entitled to recover the gross price agreed upon in the contract, subject to a deduction of the cost of machinery, or other sums paid by Rison for Bateman, the sum which it would take to complete the contract and to compensate Rison for any damages sustained by him by reason of the delay in the completion of the contract.    5 Rob. Pr. 273; *Van Buren* v. *Digges*, 11 Howard 475; 13 Amer. & Eng. En. Law, 867.    And the damages were not confined to the penalty or forfeiture stipulated for in the contract, but were to be measured by the evidence.    The contention is that Rison was entitled not only to the $100 penalty specified in the contract, but to additional damages, even including the cost of additions

and repairs put on the mill two years thereafter.    This contention cannot be sustained.    The commissioner fairly and rightly stated the account between the parties, allowing Rison the cost of completing the work which should have been done by Bateman, and $100, as covering the damages sustained by Rison by the delay of Bateman in completing the contract. The first item is clearly shown by the evidence, and the commissioner states that he allowed the $100 as covering all damages to which Rison was entitled for delay, because there were no other damages proved.    We think the evidence fully sustains his findings, and the Circuit Court committed no error in sustaining the report.

For the foregoing reasons we are of opinion that the decree of the Circuit Court complained of is clearly right, and it is therefore affirmed.

AFFIRMED.