**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1950

RECOVERY LIMITED PARTNERSHIP,

　　　　　Plaintiff - Appellee,

　　v.

THE WRECKED AND ABANDONED VESSEL S.S. CENTRAL AMERICA,

　　　　　Defendant,

----------------------------------

ROBOL LAW OFFICE; RICHARD THOMAS ROBOL,

　　　　　Claimants - Appellants,

　　and

COLLETTE DAVIDSON; MILTON T. BUTTERWORTH, JR.,

　　　　　Claimants.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca Beach Smith, Chief District Judge. (2:14-cv-00160-RBS-LRL; 2:87-cv-00363-RBS)

Argued: May 13, 2015　　　　　　　　Decided: June 22, 2015

Before NIEMEYER, DUNCAN, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the majority opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** Richard Thomas Robol, ROBOL LAW OFFICE, LLC, Columbus, Ohio, for Appellants.  Conrad M. Shumadine, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellee.  **ON BRIEF:** Brett A. Spain, WILLCOX & SAVAGE, P.C., Norfolk, Virginia; James L. Chapman, IV, Steven M. Stancliff, C. Wiley Grandy, CRENSHAW, WARE & MARTIN, P.L.C., Norfolk, Virginia, for Appellee Recovery Limited Partnership.

---

NIEMEYER, Circuit Judge:

The S.S. Central America, loaded with tons of gold en route from San Francisco to New York, sank in a hurricane off the coast of South Carolina in 1857. Columbus-America Discovery Group ("Columbus-America"), acting as the agent for Recovery Limited Partnership ("Recovery Limited"), discovered the wreck in the 1980s, and the district court subsequently granted Columbus-America salvage rights.

For over two decades, Richard T. Robol and Robol Law Office, LLC (collectively, "Robol") represented Columbus-America in the proceedings to establish its salvage rights. During the same period, Robol also defended Columbus-America, Recovery Limited, and several other related business entities, including EZRA, Inc., against claims made by others for portions of the gold recovered from the sunken vessel. In addition, Robol leased commercial property in Columbus, Ohio, to EZRA, where documents relating to the salvage operation were stored.

In June 2013, an Ohio court placed several of the companies into receivership and ordered the Receiver to collect their property from all persons holding such property, including the companies' attorneys. The Receiver gave notice of the order to Robol, and thereafter -- in July and August 2013 -- Robol turned over 36 file cabinets of materials that he had accumulated as counsel and landlord. Robol also encouraged Milton T.

3

Butterworth, Jr., an officer of Columbus-America, to turn over to the Receiver photographs, videos, and other materials related to the salvage of the S.S. Central America.

After Robol withdrew as counsel for the companies, he filed a claim in this in rem admiralty action to obtain a salvage award for himself, alleging that he had provided voluntary assistance to the Receiver in turning over files and documents related to the salvage operation, which proved useful in the continuing salvage of the sunken vessel.

The district court dismissed Robol's claim for failure to state a claim, concluding that Robol had been obligated to return the files and documents to his former clients under the applicable rules of professional responsibility and principles of agency law and therefore that his act of returning the materials to his former clients was not a voluntary act, as would be required for him to obtain a salvage award.

We agree with the district court and affirm.

I

In the mid-1980s, Thomas G. Thompson undertook to locate the wreck of the S.S. Central America and to recover its cargo of gold, valued at approximately $1.2 million in 1857. To that end, he set up a series of related business entities, including Recovery Limited, which he created to finance the project;

4

Columbus-America, which he formed to locate and salvage the ship on Recovery Limited's behalf; Columbus Exploration, LLC, which he set up to market the recovered gold; and EZRA, which he set up to pay labor costs associated with Recovery Limited's employees and consultants.

After several years of searching, Columbus-America located the wrecked ship 160 miles off the coast of South Carolina. In 1987, with Robol as counsel of record, it commenced this in rem action in admiralty, and the district court subsequently granted Columbus-America salvage rights in the ship and its cargo. Continuously from 1988 until 1991, Columbus-America conducted salvage operations, recovering large amounts of gold and other artifacts. Following two trials and two appeals, we determined in 1995 that Columbus-America was entitled to a salvage award of 90% of the value of the gold and artifacts recovered and that various insurance companies that had paid claims for portions of the lost gold were entitled to the remainder. See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568-75 (4th Cir. 1995). Columbus-America and the insurance companies thereafter divided the treasure in specie, and, in July 2000, the district court closed the case.

Several years later, minority investors and former employees who had assisted in locating the S.S. Central America and recovering its cargo initiated legal actions in Ohio state

5

court against Thompson and the related business entities to obtain portions of the award. Robol represented all of the defendants, including Recovery Limited, in these actions until he withdrew as counsel in June 2011. During the course of the proceedings, which were consolidated and removed to the United States District Court for the Southern District of Ohio, it was discovered that 500 gold coins belonging to the related business entities had disappeared. See Williamson v. Recovery Ltd. P'ship, 731 F.3d 608, 617 (6th Cir. 2013). The district court ordered Thompson to appear to explain the coins' whereabouts, but Thompson failed to do so, and, in August 2012, the court issued a bench warrant for his arrest. Thompson then fled and became a fugitive. In April 2015, after the U.S. Marshals Service finally located and arrested Thompson in a hotel room in Florida, he pleaded guilty to criminal contempt for failing to appear in federal court. His assistant later testified that Thompson had smuggled the missing gold coins to Belize.

Because of Thompson's disappearance, the Court of Common Pleas of Franklin County, Ohio, placed Recovery Limited and Columbus Exploration into receivership in June 2013, appointing Ira Kane as the Receiver. By order dated June 14, 2013, the court directed "[a]ny person who has (or, as of the time of the filing of this Entry, had) any fiduciary duty towards the Companies, by virtue of being either an officer, former officer,

6

or person holding any asset, object or thing that is, or at the time of the filing of this Entry was, the property of the companies, or either of them, . . . to surrender to and transfer to said Receiver any and all such property." The court also directed the Receiver to "conduct such maritime operations that are designed to make a positive financial return for the companies."

Pursuant to the court's order, "the Receiver served notice on all of the companies' attorneys," including Robol, "to turn over all company files and other property in their possession." Williamson v. Recovery Ltd. P'ship, No. 2:06-CV-00292, 2014 WL 1884401, at *3 (S.D. Ohio May 9, 2014), appeal docketed, No. 14-4231 (6th Cir. Dec. 12, 2014). Thereafter, during the period between July 25 and August 1, 2013, the Receiver retrieved 36 file cabinets of records from Robol that had been stored at Robol's property at 433 West Sixth Avenue in Columbus, Ohio (the "West Sixth Avenue property"), a portion of which Robol had leased to EZRA. Id.

Before Robol turned over the records to the Receiver, the Ohio district court had ordered Robol and his clients to provide the plaintiffs' accountant with various categories of documents, including inventories of the recovered gold and records of downstream sales of the gold, which the accountant needed in order to prepare a report on the financial condition of the

7

defendant-entities. Williamson, 2014 WL 1884401, at *1. Because the court found that Robol's clients had repeatedly failed in good faith to comply with its order, it twice held them in contempt. Id. Robol similarly failed to turn over inventories and records of downstream sales that he had possessed, repeatedly telling the court incorrectly that he had already provided all of the relevant documents in his possession, when, in fact, there were multiple unproduced documents among the files that the Receiver retrieved from Robol in July and August 2013. Id. at *2–4. The Ohio district court consequently granted the plaintiffs' motion for sanctions, finding that Robol had acted in bad faith and additionally that his conduct rose "beyond mere bad faith to the level of 'fraud on the court.'" Id. at *13. The court ordered Robol to reimburse the parties for the costs incurred "in discovering [the] missing inventories, and the amount expended in prosecuting [the] Motion." Id. at *15.

Also in furtherance of the Ohio Court of Common Pleas' June 14, 2013 receivership order, Recovery Limited, through the Receiver, resumed salvage operations in the S.S. Central America. Between January and May 2014, Recovery Limited filed motions in this in rem action, which had been closed for nearly 14 years, seeking to reopen the case, to substitute it for Columbus-America as the real party in interest, and to declare

8

that it was the legal owner of salvage rights in the S.S. Central America. Recovery Limited also commenced a separate in rem action against the wreck and its cargo to declare itself the salvor for future salvage operations and to obtain a salvage award for all newly recovered gold and artifacts. The district court entered orders dated July 9, 2014, reopening this in rem action, granting Recovery Limited's motion to substitute itself as the salvor, and consolidating the two in rem actions under the original action's case number. At approximately the same time, on July 8, 2014, the court granted Robol's motion to withdraw as counsel of record for Columbus-America.

Robol now alleges that Recovery Limited and its related business entities owe him $2,092,882.17 plus interest in unpaid legal fees and that EZRA owes him $68,371.93 in rent that it failed to pay for the West Sixth Avenue property. To recover these amounts, Robol filed a "Verified Proof of Claim" in the Ohio receivership proceeding on January 7, 2014.

Additionally, Robol filed a "Verified Statement of Right, Interest, and Claim" in this proceeding on June 23, 2014, seeking a salvage award from the continuing salvage operations on the ground that he aided and assisted in these salvage operations by voluntarily releasing possession of documents over which he had a retaining lien for attorneys fees and a property

9

interest from EZRA's abandonment of them upon default of its lease. More specifically, he alleged that he assisted the salvage operation (1) by returning to the Receiver various "maritime and navigational charts, maritime maps, locational data, documents, drawings, historical data and accounts, shipwreck research and analysis, photographs, video," and other materials that he had acquired through his roles as counsel and as landlord and (2) by providing "assistance in obtaining site photography and video footage" held by Butterworth. Butterworth had served as Columbus-America's Director of Photography during the early stages of the salvage operation and thereafter as the company's Vice President, Acting President, and Chief Executive Officer. Robol alleged that this aid and assistance "was voluntary and involved items in which . . . [he] had control, dominion, lien rights, ownership, and/other [sic] interests" and that Recovery Limited "utilized these materials in the salvage of the S.S. Central America to the benefit of the salvage," thus entitling him to a salvage award.

Recovery Limited, by its Receiver, filed a motion to dismiss Robol's claim under Federal Rule of Civil Procedure 12(b)(6), contending that the claim was not in the nature of a claim for a salvage award and that, in any event, Robol did not furnish his assistance voluntarily, as required to demonstrate a valid salvage claim.

10

By order dated August 8, 2014, the district court granted Recovery Limited's motion and dismissed Robol's claim for a salvage award as a matter of law. The court concluded that Robol, who was licensed to practice law in both Virginia and Ohio, had a duty under Virginia Rule of Professional Conduct 1.16(e) "to supply the materials to [Recovery Limited] within a reasonable time of the termination of his representation of [Recovery Limited] or [Columbus-America]" and therefore that his action "was not 'voluntary.'" Although the court rejected Robol's argument that it should apply Ohio law, which, Robol claimed, would have permitted him to assert a retaining lien over some of the materials as a result of unpaid legal fees, it nonetheless recognized that such a lien would not have permitted Robol to use the materials for his own purposes, citing Restatement (Third) of Agency §§ 8.05, 8.09 cmt.b (2006). "At best," the court said, Robol might have "an in personam claim for attorney's fees or document storage fees." The court concluded further that the photographs and videos that Butterworth provided to the Receiver at Robol's urging had been prepared by Butterworth during salvage operations as an employee of Columbus-America, the agent of Recovery Limited, and therefore that they belonged to Recovery Limited.

From the district court's order dismissing Robol's claim, Robol filed this appeal.

11

Robol contends first that, in turning over to the Receiver his former clients' documents relating to the salvage of the S.S. Central America, he provided voluntary assistance that proved useful in the renewed salvage operation, entitling him to a salvage award. A salvage award is, of course, compensation to persons "by whose voluntary assistance a ship at sea or her cargo or both have been saved in whole or in part from impending sea peril, or in recovering such property from actual peril or loss, as in cases of shipwreck, derelict, or recapture." The Sabine, 101 U.S. 384, 384 (1879) (emphasis added). Thus, a valid salvage claim requires a "[s]ervice voluntarily rendered when not required as an existing duty or from a special contract." Id. (emphasis added). As an initial matter, Robol argues that, in rejecting the allegations of his verified statement of claim that his actions in turning over documents to the Receiver were voluntary, the district court erred in failing to take his allegations as true, as required when ruling on a Rule 12(b)(6) motion. Specifically, he maintains that the district court should not have discredited his allegation that his "aid and assistance was voluntary" inasmuch as he returned documents over which he had "control, dominion, lien rights,

ownership, and/other [sic] interests" because of his retaining lien for unpaid attorneys fees.

Robol's allegation of voluntariness, however, was no more than a legal argument that he was not required to return to his former clients' documents over which he had a retaining lien and that his doing so was therefore voluntary. And the district court appropriately treated his legal argument as one that it could -- and indeed did -- resolve as a matter of law. Relying on the existence of Robol's attorney-client relationship, the district court concluded that Robol had a preexisting duty to turn over the documents because the Virginia Rules of Professional Conduct preclude attorneys from exercising retaining liens. Regardless of whether the district court was correct on that point, it is clear that the court was not rejecting an allegation of fact, but rather Robol's legal conclusion. Of course, such legal conclusions are not entitled to the presumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Robol also contends that, in reaching the conclusion that his action was not voluntary, the district court inappropriately went beyond the four corners of his verified statement of claim because its allegations did not include the facts necessary for

13

the court to reach that conclusion. The district court, however, did not go beyond the claim except to note that Robol had been counsel of record for Columbus-America and Recovery Limited and therefore that he owed a duty to return the materials relating to the salvage operation to his former clients. Robol can hardly dispute the court's reliance on the fact that he was counsel of record, as that is not only part of the record in this case, but also part of the record in virtually every case relating to the salvage operation. Courts are entitled to consider such matters of public record in relying on motions to dismiss. See 5B Charles Alan Wright et al., Federal Practice and Procedure § 1357 (3d ed. 2004); see also, e.g., Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (holding that a federal court may consider documents from a prior state court proceeding in conjunction with a motion to dismiss). Moreover, Robol stated in his sworn opposition to Recovery Limited's motion to dismiss that he "served as counsel for Columbus-America Discovery Group, Inc. . . . and/or Recovery Limited Partnership . . . at various times from 1987 until 2014 and with respect to various matters." In the same document, he also acknowledged that at least some of the documents that he turned over to the Receiver were the property of his clients in which he had asserted a retaining lien. The district court simply treated these matters as given and ruled as a matter of

14

law that Robol, as counsel for the entities, had an ethical duty to return the documents, notwithstanding any retaining lien that he claimed. Accordingly, we reject Robol's claim that the district court failed to adhere to established principles for ruling on a Rule 12(b)(6) motion.

On the merits, Robol contends that because he relinquished possession of the documents despite his retaining lien, his acts were voluntary, entitling him to a salvage award commensurate with the value of the documents to the continuing salvage operation.

Modern standards of professional conduct, however, preclude Robol from exercising a retaining lien in such a manner. The Virginia Rules of Professional Conduct obligate an attorney to return to a former client documents furnished by the client and attorney work product, "whether or not the client has paid the fees and costs owed the lawyer." Va. Rules of Prof'l Conduct R. 1.16(e). Although Virginia at one time recognized the common-law right of an attorney to exercise a retaining lien, see King v. Beale, 96 S.E.2d 765, 768 n.2 (Va. 1957), the Virginia State Bar Standing Committee on Legal Ethics has since clarified that "the ethical mandate [to safeguard and return client property] virtually displaces the common law retaining lien," Va. Standing Comm. on Legal Ethics, Op. 1690 (1997) ("Holding a former client's files hostage does not comport with

a lawyer's post-representation duty to take reasonable steps for the continued protection of the client's interests").

Robol argues, however, that Ohio law, rather than Virginia law, governs his conduct because he turned the documents over to the Receiver in Ohio. See Va. Rules of Prof'l Conduct R. 8.5(b) (calling for application of the rules of the jurisdiction in which a lawyer's conduct occurred, for conduct not in connection with a court proceeding). He argues that Ohio law recognizes an attorney's retaining lien, citing Foor v. Huntington National Bank, 499 N.E.2d 1297, 1301 (Ohio Ct. App. 1986).

We need not decide, however, whether the ethics rules of Virginia or Ohio apply, because Robol's claim would fail under the rules of either jurisdiction. Although Ohio adopted the Model Rules of Professional Conduct, it modified them by deleting language recognizing a retaining lien -- specifically, language authorizing a lawyer to "retain papers relating to the client to the extent permitted by other law," Model Rules of Prof'l Conduct R. 1.16(d) -- and substituting for that language a provision that "[c]lient papers and property shall be promptly delivered to the client" upon termination of a representation, Ohio Rules of Prof'l Conduct R. 1.16(d); see also Reid, Johnson, Downes, Andrachik & Webster v. Lansberry, 629 N.E.2d 431, 435 (Ohio 1994) ("[A]n attorney who is discharged must yield the case file"); 6 Ohio Jur. 3d Attorneys at Law § 236 (cautioning

16

against the assertion of an attorney's retaining lien in light of the decision in Lansberry). Thus, despite the fact that an intermediate court in Ohio once recognized the common-law retaining lien, it appears that the Ohio Rules of Professional Conduct, which subsequently were adopted by the Ohio Supreme Court, have displaced the retaining lien by obligating an attorney to turn over files to the client upon the termination of a representation.

In any event, attorneys in Ohio and elsewhere are prohibited from asserting retaining liens when doing so would cause foreseeable prejudice to the client. See Ellen J. Bennett et al., Am. Bar Ass'n, Ctr. for Prof'l Responsibility, Annotated Model Rules of Professional Conduct R. 1.16 (7th ed. 2011) ("A lawyer asserting a retaining lien is subject to the requirements of Rule 1.16 and must take appropriate steps to protect the client's interests"); see also Ohio Bd. of Comm'rs on Grievances & Discipline, Op. 92-8 (1992) (stating, before the adoption of the Ohio Rules of Professional Conduct, that "[w]henever an attorney asserts a legal right to an attorney's retaining lien, the attorney must make sure that assertion of the right does not result in causing foreseeable prejudice to the rights of the client"). By Robol's own admission, the documents that he provided to the Receiver, including maps and navigational charts, saved Recovery Limited "in excess of $600,000" in its

17

efforts to relocate the wreck. Consequently, Robol would not have been permitted to retain possession of those documents to the exclusion of his former client and thereby force that former client, to its prejudice, to expend enormous time, effort, and expense to recreate the information contained therein.

Thus, the rules of professional conduct in both Virginia and Ohio have replaced the common-law retaining lien with an attorney's obligation to turn over all files to the client upon termination of the representation, especially when, as here, the failure to do so would cause foreseeable prejudice. Accordingly, we affirm the district court's conclusion that Robol had a preexisting duty to return files to his former clients, notwithstanding the fact that the clients had not paid him all of the legal fees to which he claimed entitlement, and therefore that his action was not voluntary.

III

Robol contends also that his return of the documents stored in the portion of the West Sixth Avenue property leased to EZRA was voluntary because, as he argues, he, not his clients, owned the documents. He reasons that EZRA's failure to pay rent for the property triggered default under the lease and that EZRA's failure thereafter to remove the documents effected an abandonment of them. He argues that he thereupon became the

owner of the documents and consequently that his turning over the documents to the Receiver was a voluntary act. This argument fails for several reasons.

First, Robol has pointed to no Ohio law that would have entitled him to engage in self-help repossession of the West Sixth Avenue property upon the default of his tenant, and he has made no claim that he repossessed the property through judicial proceedings. Ohio courts have held that commercial lessors are entitled to self-help repossession of real property only where "a provision in the lease provides for self-help repossession." Quigg v. Mullins, No. L-89-314, 1991 WL 59886, at *5 (Ohio Ct. App. Apr. 19, 1991). Robol's lease with EZRA, however, did not contain such a provision. It provided that "if the Premises shall be abandoned . . . and the same continues for ten (10) days after written notice to Lessee by Lessor, then Lessor . . . may declare this Lease terminated and proceed pursuant to the Ohio Revised Code to repossess the Premises and remove Lessee." (Emphasis added). The Ohio Revised Code does not itself authorize self-help repossession, providing only a judicial remedy against defaulting tenants. See Ohio Rev. Code § 5321.03. Moreover, and more importantly, even if Robol had lawfully repossessed the West Sixth Avenue property, such repossession would not have entitled him to take ownership of the personal property on the

19

premises. See Greer v. Bruce, No. C-140121, 2014 WL 5817889, at *3 (Ohio Ct. App. Nov. 5, 2014) (holding a landlord liable for conversion of a defaulting tenant's property where there was "no evidence that [the tenant] had agreed to permit the [landlord] to summarily confiscate and sell the property stored on the [landlord's] land without compensating him for its value").

Second, in the accounting action in the Ohio district court, Robol conceded that the documents stored at the West Sixth Avenue property were not his, but rather his clients'. As he stated in an affidavit, "[t]he files provided to the Receiver were not 'Robol Law Office files' or 'Robol's files,'" but were rather "files owned and that had been controlled by the client." Such statements belie his claim that EZRA's conduct gave him ownership.

Third, when the Receiver, pursuant to the receivership order, contacted Robol seeking all company files in his possession, Robol not only failed to assert any ownership interest in the files -- arguing to the contrary that they were client-owned files in which he had a possessory retaining lien -- but also acquiesced in the Receiver's demand. In the face of this behavior, Robol can hardly now claim ownership in the files.

Fourth, any ownership of the files through EZRA's abandonment of them could not overcome Robol's overarching

20

ethical duty, discussed above, to return files to his former clients upon termination of the representation.

In sum, Robol's claim that he owned the files located at the West Sixth Avenue property and voluntarily turned them over to the Receiver is completely devoid of merit.

IV

Finally, Robol contends that he should receive a salvage award because he was able to convince Butterworth to return to the Receiver photographs and videos that proved useful in the renewed salvage operations. We reject this argument for the reasons given by the district court. Because Butterworth created the materials as an employee of Columbus-America during the initial salvage operations, the materials were not his to give, but rather belonged to his employer, and he was obligated by the receivership order to return them. Thus, Robol's encouragement was nothing more than a collateral push to have Butterworth comply with a preexisting legal obligation. Such effort by Robol cannot form the basis of a salvage award.

Moreover, when Robol contacted Butterworth about the materials, he was still counsel for Columbus-America. Consequently, he can hardly claim that providing such legal service to his clients entitles him personally to a salvage award.

V

Finally, we note the questionable posture of Robol's claim in this case. For years, Robol represented Thompson, Columbus-America, Recovery Limited, and other related entities as legal counsel, assisting them in successfully obtaining a salvage award for their efforts in recovering gold and other artifacts from the wreck of the S.S. Central America. Now, after concluding his representation, he claims his own salvage award in competition with his former clients. And he does so largely on the basis that he "voluntarily" returned to his former clients their files related to the salvage effort. Whether this posture creates an impermissible conflict of interest or disloyalty is not something that we decide here, but it raises a disquieting question. See Ohio Rules of Prof'l Conduct R. 1.9(c)(1) (prohibiting an attorney from "us[ing] information relating to the [terminated] representation to the disadvantage of the former client"); Va. Rules of Prof'l Conduct R. 1.9(c)(1) (similar); Restatement (Third) of Agency § 8.05 & cmt. b (prohibiting an agent from using the property of his principal for his own purposes, even after the agency relationship has concluded).

Nonetheless, we affirm the district court's dismissal of Robol's verified statement of claim for substantially the same reasons given by the district court.

AFFIRMED