## Richmond

**BERL M. ERLICH; ARTHUR W. PATTON; TYSONS ICE RINK, LIMITED PARTNERSHIP AND TYSONS ICE RINK, INCORPORATED v. HENDRICK CONSTRUCTION COMPANY, INC., AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND.**

June 11, 1976.

Record No. 750878.

Present, All the Justices.

*Robert C. Fitzgerald (John F. Carlton, Jr.; Fitzgerald and Smith,* on briefs), for appellants.

*Ivy P. Blue, Jr.,* for appellees.

POFF, J., delivered the opinion of the court.

On August 15, 1972, Arthur W. Patton and Berl M. Erlich, partners in Tysons Ice Rink (owner), signed a $675,000 contract with Hendrick Construction Company, Inc., (contractor), for the construction of an ice rink at Tysons Corner. The contract, prepared by contractor, provided that work would begin within 10 days and would be "substantially completed within 150 calender [sic] days." Architect's specifications, expressly incorporated in the contract, provided that "time is of the essence of this contract" and fixed liquidated damages of $200 per day "[i]f the contractor shall neglect, fail or refuse to complete the work within the time specification". In a written addendum to the contract, the following language appeared:

"WE OMIT ANY AND ALL PENALTY CLAUSES CONCERNING TIME ALLOTTED FOR COMPLETION OF THIS PROJECT."

An attachment to the contract, entitled "Conditions", stated:

"There are no oral or written understandings or agreements between buyer and seller relative to this sale that are not fully expressed in this contract or in the contract of which this is a part."

At the time of execution, Patton and Erlich signed a note, postdated January 15, 1973, promising to pay contractor $25,980 on January 15, 1974. On the face of the note were the words: "Not valid if building is not built." On brief and at trial, contractor said that the note constituted consideration in addition to that stated in the

contract, and that the note was executed and the time completion clause was inserted in the contract to induce lenders to finance construction. The amount of the security and performance bonds issued by Fidelity and Deposit Company of Maryland (surety) was $800,000.

The Ice Rink was not completed within the 150-day period. On June 13, 1973, a change order was executed authorizing a modification in a masonry partition. The last paragraph (hereinafter, "the time extension paragraph"), stated:

> "This is also an extension of time to the contract agreement between Tysons Ice Rink Limited Partnership and Hendrick Construction Company, Inc. dated 15 August 1972 until the project can be completed due to the many change orders and severe weather conditions this project has been working under. If anyone should instigate any suits against Hendrick Construction Company, Inc., Tysons Ice Rink Limited Partnership, or Burl [sic] M. Erlich or Arthur W. Patton will stand all cost, plus 25% for attorney fees to defend said suits."

By September 1973, the project was still not completed, and owner terminated the contract. On October 3, 1973, the parties executed a written agreement which stated that it was "being entered into for the purpose of allowing the Contractor to return to the job site". Referring to the August 15, 1972, contract completion clause and reciting owner's "opinion" that contractor had failed to complete construction "in the time included in the written contract", the agreement provided that "execution of this Agreement in no way alters the terms of the written contract . . . [or] serve[s] to extend the time for performance of the contract beyond the 150 days set in the written contract". It provided further that "[e]ach party specifically reserves any and all rights it might have . . . to seek damages for breach of contract." The agreement authorized contractor to "finish the work" within 40 days and fixed a penalty of $1000 per day in liquidated damages for any delay beyond that time. Contemporaneously with the new agreement, the parties executed a change order which duplicated the language of the June 13, 1973, change order, except that the time extension paragraph was omitted.

Contractor completed the project on November 14, 1973, and owner claims no damages for breach of the October 3, 1973, agreement.

On January 22, 1974, contractor filed a memorandum of mechanic's lien in the sum of $133,919.24. Contractor filed a motion for judgment on the note (Law No. 31029) on March 25, 1974. Three days later, owner filed a motion for judgment against contractor seeking $513,400 in damages for fraud and breach of contract (Law No. 31056). Four days later, contractor filed a bill of complaint to enforce its mechanic's lien (Chancery No. 42224), and owner filed a cross-bill seeking damages for fraud and breach of contract. Sitting without a jury, the trial court consolidated the three cases for trial.

Owner introduced evidence to show that the time extension paragraph did not appear on the June 13, 1973, change order at the time it was signed. An expert in the analysis of typewritten documents testified that the different color type and the misalignment of margins indicated that the paragraph had been added to the document some time after its initial preparation. Owner contended that because the project had not been completed on time, it had suffered substantial damages, including increased interest costs and loss of rental revenues during the period of delay. Owner testified that the roof was defective and that, because of the improper installation of a "header trench", the ice rink had to be closed for repairs for nearly a month during the fall of 1974.

Edward Hendrick, president and sole stockholder of contractor, testified that the August 15, 1972, agreement between the parties consisted of three components: the written contract, the promissory note, and a contemporaneous oral agreement to execute a change order at a later date extending the time for completion. He said that the time extension paragraph was included in the June 13, 1973, change order pursuant to the oral agreement and that it was placed there before Patton signed his name. Hendrick believed that, until the 40-day limit was fixed in the October 3, 1973, agreement, contractor was not bound to any completion deadline.

Contractor introduced evidence to show that the soil on the job site would not percolate, that the water table was high, and that pools of water accumulated during the course of construction; that heavy rains, high winds, and "unfavorable" weather conditions slowed progress; and that, but for these problems and several change orders for work not included in the original plans, there would have been no delay.

On April 4, 1975, pursuant to letter opinion dated March 27, 1975, the trial court entered three final orders. In Law No. 31029, the order

awarded contractor judgment for the face of the note, plus interest and attorney's fee. In Law No. 31056, the order denied owner's claim for damages for breach of contract. In Chancery No. 42224, the order awarded contractor $113,650 for "money due and owing . . . for construction work under the contract" and denied owner's claim under its cross-bill.

## I.

Challenging the final order in Law No. 31056 and the order on the cross-bill in Chancery No. 42224 denying damages for breach of contract, owner argues that "parole [sic] evidence . . . which tended to vary the terms of the written contract" was inadmissible, and that the trial court committed reversible error in admitting evidence to support contractor's contention that the parties orally agreed to issue a change order amending the 150-day completion deadline written into the formal contract. Contractor, on the other hand, says that "a separate oral agreement as to any matter on which the written contract is silent and which is not inconsistent with the terms thereof, may be proved by parol evidence if it was not the intention of the parties that the instrument was the complete and final statement of the entire transaction." Here, argues contractor, the August 15, 1972, agreement was not "totally integrated" and parol evidence was admissible to prove the "entire agreement between the parties."

> "The rule which excludes parol evidence when offered to vary the terms and conditions of an integrated written contract has nowhere been more strictly adhered to in its integrity than in Virginia. It, in effect, declares that, where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms the writing shall be the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement." (Citation omitted). *Pulaski Bank Ex'r v. Harrell,* 203 Va. 227, 233, 123 S.E. 2d 382, 387 (1962).

*See also High Knob, Inc.* v. *Allen,* 205 Va. 503, 506, 138 S.E.2d 49, 52 (1964); *Durham* v. *Pool Equipment Co.,* 205 Va. 441, 446, 138 S.E.2d 55, 59 (1964); *Enlow & Son* v. *Higgerson,* 201 Va. 780, 789-90, 113 S.E.2d 855, 862 (1960).

The written contract of August 15, 1972, "imposes a legal obligation in clear and explicit terms", *viz.,* the obligation to complete con-

struction in 150 days. The parties expressly agreed that "time is of the essence of this contract", and they entered into mutual covenant that "[t]here are no oral or written understandings or agreements . . . that are not fully expressed in this contract". Contractor insists that the addendum to the contract omitting "any and all penalty clauses concerning time allotted for completion" must be construed as a revocation of the time completion clause in the body of the contract. In our view, the language in the addendum, chosen by contractor, does nothing more than eliminate the penalty clause in the architect's specifications fixing liquidated damages for delay, leaving unimpaired owner's right to recover conventional damages resulting from unexcused delay.

Evidence pertaining to the alleged "separate oral agreement" was offered for the designed purpose of contradicting the "complete, unambiguous, unconditional written instrument", *Godwin* v. *Kerns*, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941), and we hold that it was error to admit parol evidence for that purpose.

On brief, contractor says that "[c]learly the Court found that [owner] extended the performance time as agreed in the three part agreement." From the record as a whole, it appears that this was the trial court's finding and that such finding rested upon parol evidence erroneously admitted. When, as here, the trial judge fails to state the finding upon which his ruling was based and it appears on appeal that the finding relied upon inadmissible evidence, the ruling cannot be sustained. Accordingly, the final order in Law No. 31056 must be reversed and the case remanded for further proceedings.[1]

Upon remand, the issues to be resolved will be whether the delay beyond the 150-day deadline, or any part thereof, was excused;[2] the quantum of damages, direct or consequential, resulting from any

---

[1] We need not decide whether the time extension clause was validly incorporated in the June 13, 1973, change order before it was executed. Assuming that it was, that it was supported by valuable consideration, and that it constituted a written amendment to the written contract, the October 3, 1973, change order and the new written agreement executed contemporaneously therewith constituted an amendment to the June 13, 1973, change order and reaffirmed the parties' commitment to and reliance upon the 150-day completion clause in the August 15, 1972, contract.

We find no merit in contractor's contention that, because owner introduced no evidence to show that the surety had approved the October 3, 1973, agreement the contracting parties were not bound thereby. Contractor performed under the agreement, claimed its benefits, and cannot now be heard to disavow its obligations.

[2] The record shows that both parties tried the cases in the court below upon the theory that evidence designed to excuse delay was competent, and such evidence, if otherwise admissible, will be competent upon remand.

delay found to be unexcused, *see Roanoke Hospital* v. *Doyle & Russell*, 215 Va. 796, 214 S.E.2d 155 (1975); and the quantum of damages resulting from defective workmanship, if any.

■ On appeal, owner makes an argument which may raise an evidentiary question on remand. Owner argues that contractor was not entitled to prove excuse for delay. More specifically, owner says that when Hendrick testified that his understanding was that contractor was under no time deadline, and that he expected to complete the project in 12 to 14 months, contractor became bound by his testimony and could not rely on evidence designed to excuse delay. We do not agree. The rule in *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S.E. 652, 656 (1922) that a litigant's testimony is "binding upon him" applies to "statements of fact" which are "within his own knowledge" and not to statements of opinion. *See Baines* v. *Parker*, 217 Va. 100, 225 S.E.2d 403 (1976), this day decided. Hendrick's testimony was a statement of his opinion, not a statement of fact. Indeed, in view of our construction of the addendum clause and our holding that the 150-day completion clause cannot be contradicted by parol evidence, Hendrick's testimony was nothing more than a misstatement based upon a misimpression. Contractor was not bound thereby and was entitled to rely on other evidence excusing delay.

## II.

■ Attacking the judgment in favor of contractor in Chancery No. 42224, owner quotes from *Hurley* v. *Bennett*, 163 Va. 241, 253, 176 S.E. 171, 175 (1934):

> "The party who commits the first breach of a contract, is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform."

In *Kirk Reid Company* v. *Fine*, 205 Va. 778, 139 S.E.2d 829 (1965), we considered for the first time whether the "no recovery" rule was applicable in building contract cases. There, a contractor filed a suit to enforce a mechanic's lien, and the owner filed a cross-bill claiming damages for breach of contract. We held that the contractor was entitled to recover, even though the contractor had departed from contract specifications. Reserving decision as to the applicability of the "no recovery" rule "in the instance of the single claim of a wilfully departing contractor against an owner without

an offsetting claim by the latter", *id.* 205 Va. at 789, 139 S.E.2d at 837, we said:

"The more recent annotation in 76 A.L.R.2d 805 and the cases there cited indicate a relaxation of the rigid rule enunciated by some of the earlier decisions. This is especially true where the contractor and owner assert offsetting claims against each other, or where the departures from the contract do not involve real instances of bad faith." *Id.* 205 Va. at 788-89, 139 S.E.2d at 836.

In another opinion involving a suit to enforce a mechanic's lien, we held:

"[I]f it appears that the complainants are entitled to recover . . . , the court can proceed to give judgment in their favor for the amount due, although they may have failed to establish their right to a lien; it being well settled that, when a court of equity has once acquired jurisdiction of a cause upon equitable grounds, it may go on to a complete adjudication, even to the extent of establishing legal rights and granting legal remedies which would otherwise be beyond the scope of its authority." (Citations omitted). *Johnston* v. *Bunn,* 108 Va. 490, 493, 62 S.E. 341, 342 (1908).

Applying these principles, we hold that the "no recovery" rule is inapplicable here.

Contractor's mechanic's lien was based upon a memorandum in the sum of $133,919.24. Contractor was awarded $113,650.00. The chancellor assigned no explanation for the $20,269.24 offset. Since, as we noted in Part I, the chancellor concluded that the completion deadline was inoperative, the offset did not represent delay damages due owner. If the offset represented damages resulting from defective workmanship, we find no evidence in the record which arithmetically supports the chancellor's computation. It follows that the award itself is not supported by the evidence, and the final order in Chancery No. 42224 must be reversed and the cause remanded for further proceedings.

Upon remand, this cause will be consolidated with Law No. 31056. The quantum of damages found in this cause to be due contractor, and the quantum of any damages found as provided in Part I to be due owner, will be offset one against the other and an award for

the difference will be entered in favor of the prevailing party. *See Rison* v. *Moon,* 91 Va. 384, 395, 22 S.E. 165, 167 (1895).

### III.

■ We find no merit in owner's assignments of error to the final order in Law No. 31029 granting contractor judgment on the note. At the time the motion for judgment was filed, the project had been completed, the condition precedent stated on the face of the note had been satisfied, and the unpaid note, part of the contract consideration, had fully matured.

■ Owner believes that the record reveals "active deception or fraud on the part of [contractor] for which it should have been held liable." Contractor asserts that the evidence shows that owner "is the party that practiced deceit by not informing [contractor] of soil studies and the high water table that existed on the site." We hold that neither party has proved fraud by clear, cogent, and convincing evidence, *see Wolford* v. *Williams,* 195 Va. 489, 498, 78 S.E.2d 660, 665 (1953), and damages for fraud will not be in issue on remand.

\* \* \* \*

The order entered in Law No. 31029 is affirmed. The orders entered in Law No. 31056 and Chancery No. 42224 are reversed and the cases are remanded for further proceedings not inconsistent with this opinion.

*Affirmed in part;*
*reversed in part;*
*and remanded.*