# Margaret S. Braden

v.

# IsaBell K. Horsley Real Estate, Ltd.

Record No. 920568

January 8, 1993

Present: All the Justices

John B. Mann *(Levit & Mann,* on briefs), for appellant.

James C. Breeden *(Matson C. Terry, II; Barbara H. Breeden; B.H.B. Hubbard, III; Rumsey, Breeden, Hubbard, Bugg & Terry,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

This is a dispute between a broker and a salesperson over entitlement to commissions on the sale of real estate. We awarded this appeal to consider whether the trial court properly applied the doctrine of *Massie* v. *Firmstone,* 134 Va. 450, 114 S.E. 652 (1922). According to the doctrine, no party litigant can successfully ask a court or jury to believe that the party's testimony is untruthful; the

party is bound by statements of fact and necessary inferences flowing from those facts. In other words, when the case depends upon facts within the party's own knowledge, and as to which the party has testified, the case cannot be made stronger than such party makes it. *Id.* at 462, 114 S.E. at 656.

In March 1985, appellant Margaret S. Braden, experienced in the sale of real estate, executed an "Independent Contractor Agreement" with IsaBell K. Horsley, an Urbanna real estate broker doing business under the corporate name IsaBell K. Horsley Real Estate, Ltd. The parties agreed to become affiliated with each other in the broker's general real estate business. On June 30, 1986, the broker unilaterally terminated the affiliation.

In June 1989, Braden filed the present action against the Horsley corporation for breach of contract. In an amended motion for judgment, the plaintiff alleged that she "became employed as a real estate salesperson with" the defendant in March 1985, and that the defendant agreed to compensate the plaintiff according to a certain schedule providing for "Commission Splits." The schedule allowed for certain percentages of the earned commissions to be divided among the plaintiff, defendant, or "Another Agent," depending upon certain contingencies, such as whether the plaintiff sold property upon which she had obtained an authorization to sell (a listing) or whether the plaintiff merely listed property that another agent sold.

The plaintiff alleged that when defendant "involuntarily terminated" the affiliation, the plaintiff "had procured for defendant" four real estate listings from which the plaintiff was to receive a percentage of any commissions earned by defendant when the properties were sold. According to the allegations, the plaintiff was entitled to "listing commissions" on the sales of properties which we shall designate as Greer, Spechio, Johnson, and Sanders Bay.

The plaintiff alleged that "defendant has failed to pay plaintiff commissions earned by plaintiff during her employment with defendant in regard to her efforts in listing . . . properties while employed by defendant." The plaintiff sought recovery for the commission amounts as well as other items of expense, which she claimed arose from the affiliation, in the total sum of $44,495.64. Responding, the defendant denied any liability to the plaintiff.

In a November 1991 trial by jury, the court below sustained defendant's motion to strike the plaintiff's evidence at the conclusion of plaintiff's case-in-chief. The plaintiff appeals from a January 1992 order dismissing the action with prejudice.

We will dispose of the claims based upon the Greer, Spechio, and Johnson properties in summary fashion. In each transaction, during her affiliation with defendant and prior to her June 1986 termination, plaintiff had obtained a listing to sell the property. Each transaction closed after the plaintiff had been terminated and, in each case, the listing had expired by its terms before a contract to purchase the property had been executed and before the property had been sold. And, in each instance, a new and separate listing agreement had been obtained by another agent affiliated with defendant and the sale was made under the new listing. Additionally, each new listing agreement made no reference to any renewal of an earlier agreement.

As the plaintiff observes, the employment agreement between the plaintiff and defendant provided for the plaintiff to share in any commission received from the sale of property even if plaintiff only had listed the property for defendant. As pertinent, the agreement stated: "When Salesperson shall perform any service hereunder, whereby a commission is earned, such commission shall, when collected, be divided between Broker and Salesperson." Also, the employment agreement was silent regarding the effect on commissions of the expiration of an original listing agreement and subsequent relisting by another agent. But the employment agreement also provided that, after termination of the agreement, "all listings of Broker's office of real estate for sale and lease during such affiliation shall be the property of Broker." Additionally, a statement of "Company Policy" incorporated in the employment agreement provided: "If an Agent leaves the Company, all listings become the property of the Company."

Given the contract provisions and the facts of the three transactions, we hold that the trial court properly ruled, as a matter of law, that the plaintiff had not established prima facie that she was entitled to share the commissions received by defendant for the sales of the Greer, Spechio, and Johnson properties. The plaintiff has not furnished any basis, either from the evidence or from the terms of the various contracts, that would entitle her to share commissions from sales made upon new and independent listings and

purchase contracts, all of which were negotiated by other salespersons after termination of her affiliation with defendant and after the original listings had expired. Contrary to the plaintiff's contention, there was no credible evidence that the plaintiff, by procuring the original listings, had set in course a chain of events that resulted in the payment of commissions to the defendant for its listing of the three properties.

We now turn to a discussion of the Sanders Bay transaction; the chronology of events displays a different pattern from the other three transactions. The sale of the Sanders Bay property, a 24-acre parcel on the Rappahannock River near White Stone, was consummated within the term of the original listing obtained by the plaintiff, but the contract of purchase was executed and the closing occurred after the plaintiff's affiliation with defendant had ended. Specifically, two listings (one for the land and another for townhouses to be built on the land) were dated May 15, 1986 to expire November 30, 1987. After the plaintiff's affiliation terminated on June 30, 1986, a contract for the purchase of the property was executed on September 9, 1986. Closing of the transaction occurred on September 25, 1987.

Significantly, both listing agreements included the following provision, ''NOTE: This contract subject to Bankruptcy Court approval.'' For clarity, we shall treat the two listing agreements as one.

During cross-examination of the plaintiff, the defendant sought to obtain an admission that no valid listing agreement existed with the owners of Sanders Bay because the bankruptcy court never approved the listing. Thus, according to defendant, plaintiff ''did not obtain a listing, did not procure a purchaser, did not negotiate a contract and, in sum, played no part in the sale of Sanders Bay.''

Plaintiff was asked repeatedly if she knew whether the bankruptcy court ever approved the listing. The plaintiff answered the queries differently. At one point, she said that she ''had to assume'' it was approved ''since'' Horsley ''never told me any differently.'' At another point, the plaintiff responded, ''I assumed that it was approved because of Mrs. Horsley. I had no reason to question it.'' Later, she stated, ''I had no knowledge that it had not been approved.''

Counsel for defendant referred the plaintiff to her discovery deposition taken about eight months before trial. Plaintiff conceded that she answered ''No'' to the question, ''Are you aware of whether or

not it [the listing agreement] was ever approved by the bankruptcy court?'' When asked again whether she remembered being asked the deposition question, she responded, ''I assumed it was.'' Upon being reminded that the answer was not responsive to the question in that the trial question merely was whether she recalled saying ''No'' to the deposition question, the plaintiff answered at trial, ''Well, I don't recall it.'' At another point, plaintiff said she ''must have misunderstood'' counsel during the deposition.

During cross-examination, counsel for defendant also referred the plaintiff to a letter (not a part of the record on appeal) apparently written by the plaintiff to the state ''Real Estate Commission'' about the Sanders Bay transaction. Plaintiff admitted that she wrote: ''Also, to my knowledge, these listings were never approved by the bankruptcy court.'' The plaintiff explained during her testimony, however, that she was ''saying that'' only after she heard Horsley make such a statement. The plaintiff also stated that, although she had ''gone on record with the state agency'' that to her knowledge the listing agreement ''was not a valid listing,'' she nevertheless thought at the time she wrote the letter that the listing was valid.

Finally, during cross-examination, the plaintiff was asked whether her ''answer today'' is that she ''assumed'' the listing had received court approval, she responded, ''Yes, because [Horsley] was saying it was an exclusive.'' Then the plaintiff answered ''No'' to the trial question whether she had ''any knowledge that it was ever approved.''

 In comments made when sustaining the defendant's motion to strike the plaintiff's evidence on the Sanders Bay claim, the trial judge referred to the deposition testimony and the letter. The court applied *Massie* v. *Firmstone*, stating ''there was no dispute'' that the plaintiff believed that the listing was invalid. This was error; plaintiff's statements do not preclude her from asserting that the listing agreement is valid and that she is entitled to a listing commission under it. Rather, the jury should have been permitted to evaluate the plaintiff's testimony as a whole, taken together with all the other evidence in the case, in deciding whether plaintiff was entitled to the commission under her contract with defendant.

 The *Massie* doctrine applies only to a party litigant's statements of fact that are within the litigant's own knowledge, and not to statements of opinion. *Erlich* v. *Hendrick Constr. Co.*, 217 Va. 108, 114, 225 S.E.2d 665, 669 (1976). The doctrine does not apply to statements made by a party concerning matters beyond the

party's realm of knowledge, *Charlton* v. *Craddock-Terry Shoe Corp.*, 235 Va. 485, 489, 369 S.E.2d 175, 177 (1988), to equivocal statements, *Clayton* v. *Taylor*, 193 Va. 555, 560-61, 69 S.E.2d 424, 428-29 (1952), or to adverse statements considered in isolation from a party's testimony as a whole, *Travis* v. *Bulifant*, 226 Va. 1, 5, 306 S.E.2d 865, 867 (1983).

In the present case, the plaintiff's deposition statements and the statement in the letter may not be viewed in isolation from her whole testimony at trial. When ruling on the motion to strike, the trial court was bound to view that trial testimony, which was equivocal, in the light most favorable to the plaintiff. Thus viewed, the testimony supported a conclusion that the listing was valid, particularly in light of evidence presented by the plaintiff which established that the property was actually sold and that the defendant received a sales commission of $28,858.65. A legitimate inference from that fact alone is that the bankruptcy court must have approved the listing as a predicate for payment of a commission on the sale.

Moreover, many of the plaintiff's statements at trial were mere expressions of opinion or were statements of fact that were not within her own knowledge. Repeatedly, she stated that she "assumed" the listing had been approved but said that she had no "knowledge" that it was ever approved. In sum, this is the classic example of a case in which the *Massie* rule should not have been applied. *See TransiLift Equipment, Ltd.* v. *Cunningham*, 234 Va. 84, 94-95, 360 S.E.2d 183, 189 (1987).

Consequently, the trial court's judgment as it relates to the Greer, Spechio, and Johnson transactions will be affirmed. The judgment as it relates to the Sanders Bay transaction will be reversed and the case will be remanded for a new trial limited to the plaintiff's claim arising from that transaction.

*Affirmed in part,*
*reversed in part,*
*and remanded.*