PRESENT:  All the Justices

PAUL G. BEETON

v.  Record No. 011225   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    March 1, 2002
DENNIS BEETON, INDIVIDUALLY AND AS
CO-EXECUTOR OF THE ESTATE OF
MARGARET R. BEETON, ET AL.

           FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                     William L. Wellons, Judge

     In this appeal, we consider whether the chancellor erred in

his determination of the ownership of certain intangible

personal property.

     Paul G. Beeton, Dennis J. Beeton, and Mary E. Watson are

three of the four children of Margaret R. Beeton (Mrs. Beeton),

who died in January 1998.  In 1985, Mrs. Beeton had executed a

will directing that her property be divided into three equal

shares and distributed to Paul, Dennis, and Mary.  In her will,

Mrs. Beeton also expressly disinherited her fourth child and

appointed Paul, Dennis, and Mary as co-executors of her estate.

     The property at issue in this appeal includes two United

States Treasury Bills, in the amounts of $250,000 and

$1,000,000, formerly owned by Mrs. Beeton.  On the date of her

death, Paul was the designated "payable on death" (P.O.D.)

beneficiary of both Treasury Bills.  Also at issue in this

appeal is the ownership of a certificate of deposit in the

approximate amount of $200,000, which Mrs. Beeton purchased in

1996 at Community National Bank (the Community National CD). At the time of this purchase, Mrs. Beeton designated Paul as the P.O.D. beneficiary. However, in March 1997, Paul had the Community National CD reissued payable to "Margaret S. Beeton or Paul S. Beeton W/S," which purported to establish them as joint owners with right of survivorship.

After Mrs. Beeton's death, Dennis and Mary (collectively, the executors) filed a bill of complaint asking that Paul be required to return to the estate certain assets, including the Community National CD and the $250,000 and $1,000,000 Treasury Bills. In their bill of complaint, the executors alleged that Mrs. Beeton "lacked the mental capacity to understand and appreciate" the transactions that designated Paul as the P.O.D. beneficiary on the two Treasury Bills and as joint owner of the Community National CD. The executors further alleged that the disputed transactions were void based on Paul's fraud and the undue influence he exerted over Mrs. Beeton.

At trial, the chancellor heard evidence that in 1988, Paul resigned from his employment as a schoolteacher, and began residing with Mrs. Beeton and depending on her for financial support. During this time, Paul performed various tasks for his mother, including maintaining her home and raising tobacco on her farm.

2

In 1994, Paul and Mrs. Beeton became estranged due to Paul's violent behavior caused by his abuse of alcohol. Paul and Mrs. Beeton reconciled about one year later and Mrs. Beeton purchased a residence for Paul near her home. After their reconciliation and until her death, Paul continued to maintain his mother's home and to assist her with her personal needs.

Mrs. Beeton had two accounts in which she held Treasury Bills. One account contained three Treasury Bills, each in the amount of $250,000, which were payable on her death to Paul, Dennis, and Mary, respectively. In a second account (the separate account), Mrs. Beeton held three other Treasury Bills, one in the amount of $200,000, and the Treasury Bills of $250,000 and $1,000,000 at issue in this appeal. The Treasury Bills in the separate account were held solely in Mrs. Beeton's name and originally had no P.O.D. designations.

In December 1997, Mrs. Beeton, then 80 years old, began to rely on Paul as her primary caretaker because her health was failing. Until that time, Mrs. Beeton had administered her financial accounts without assistance from Paul. However, when the three $250,000 Treasury Bills bearing the P.O.D. designations and the $200,000 Treasury Bill in the separate account were due for renewal, Mrs. Beeton requested Paul's help in renewing them. The Treasury Bills of $250,000 and $1,000,000 in the separate account were not due for renewal at this time.

Paul testified that at his mother's direction, he completed by telephone an automated renewal procedure for the Treasury Bills that were due to expire. Paul also stated that he and Mrs. Beeton "ran across a bill that did not have a POD on it. She told me that she would like to place a POD on it." Mrs. Beeton asked Paul to obtain a Transaction Request Form for this purpose from the United States Department of the Treasury.

Paul stated that he thought that his mother was referring only to the $200,000 Treasury Bill in the separate account, and that he was unaware that there was more than one Treasury Bill in that account. Paul completed the Transaction Request Form at Mrs. Beeton's direction, writing in the account number and Mrs. Beeton's name, and designating the account in the name of "Margaret S. Beeton POD Paul G. Beeton."

After Mrs. Beeton signed the completed form in Paul's presence, he took the form to an officer of Crestar Bank in South Boston who guaranteed Mrs. Beeton's signature. According to Paul, only after Mrs. Beeton's death did he learn that the form designated him as the P.O.D. beneficiary of an account that contained three Treasury Bills.

When questioned further about his conversation with his mother concerning the addition of a P.O.D. designation, Paul testified, "At that time she indicated that she wanted to put a POD on the account." However, when questioned why Mrs. Beeton

4

wanted to make the P.O.D. designation, Paul also stated, "From her conversation she just indicated to me considering the way things are going I would like to place a POD on that bill."

Paul also testified that when Mrs. Beeton instructed him to list himself as the P.O.D. beneficiary on the Transaction Request Form, she commented to Paul, "[T]hat's a lot of responsibility." Paul stated that his mother's comment did not have any meaning to him at the time because he thought that she was referring only to the Treasury Bill of $200,000. Paul described himself as "flabbergasted and shocked" when he discovered that he was also the P.O.D. beneficiary of the two additional Treasury Bills in the separate account.

In the final decree, the chancellor found that Mrs. Beeton was competent at the time of the disputed transactions, and that "such transactions were not the product of the fraudulent actions or undue influence of Paul upon [Mrs. Beeton]." However, the chancellor awarded judgment in favor of the executors on the $250,000 and $1,000,000 Treasury Bills.

The decree stated that there was no evidence showing that Mrs. Beeton intended to make Paul the beneficiary of the $250,000 and $1,000,000 Treasury Bills. The chancellor held that the evidence regarding the separate account showed that Mrs. Beeton only intended to make Paul the P.O.D. beneficiary of the $200,000 Treasury Bill in that account. Citing Massie v.

5

*Firmstone*, 134 Va. 450, 114 S.E. 652 (1922), the chancellor ruled that Paul was bound by his testimony that before his mother's death, he thought that her intent was to have the added P.O.D. designation apply only to the $200,000 Treasury Bill.

The chancellor also held that Paul was the owner of the Community National CD. The decree stated that the 1997 certificate executed by Paul was null and void because, at that time, Paul lacked any ownership interest in the certificate purchased by Mrs. Beeton in 1996. The decree further provided that the 1996 certificate designating Paul as the P.O.D. beneficiary remained in effect.

Paul appeals from the portion of the chancellor's decree awarding the $250,000 and $1,000,000 Treasury Bills to Mrs. Beeton's estate. The executors assign cross-error to the part of the chancellor's decree awarding to Paul the Community National CD.

Paul argues that the Transaction Request Form signed by Mrs. Beeton was prima facie evidence of her intent and that the executors failed to carry their burden of proving a contrary intent. He asserts that absent a showing of fraud, undue influence, mistake, or incompetence, Mrs. Beeton's intent, as evidenced by the form of the account on the date of her death, is controlling. Paul further contends that the *Massie* doctrine does not apply to his testimony about his impression of his

6

mother's intent because her unexpressed intent was beyond the realm of his personal knowledge. Paul thus contends that the two Treasury Bills at issue belong to him as the P.O.D. beneficiary of the separate account.

In response, the executors argue that the evidence supported the chancellor's decision regarding the two Treasury Bills. The executors assert that Paul was bound by his testimony under Massie, and that his testimony established that Mrs. Beeton intended to make Paul the P.O.D. beneficiary of only the $200,000 Treasury Bill, not of the entire contents of the separate account. The executors contend that the chancellor appropriately considered this evidence in determining that Mrs. Beeton's actual intent was contrary to the form of the account. We disagree with the executors' arguments.

Our standard of review is well established. As trier of fact, the chancellor evaluated the testimony and the credibility of the witnesses. Johnson v. Cauley, 262 Va. 40, 44, 546 S.E.2d 681, 684 (2001); Advanced Marine Enters., Inc. v. PRC Inc., 256 Va. 106, 120, 501 S.E.2d 148, 156 (1998). Thus, we will not set aside his findings on appeal unless they are plainly wrong or without evidentiary support. Nelson v. Davis, 262 Va. 230, 234, 546 S.E.2d 712, 715 (2001); Hudson v. Pillow, 261 Va. 296, 302, 541 S.E.2d 556, 560 (2001).

7

The record shows that the separate account containing the two disputed Treasury Bills was a "Treasury Direct" account established by Mrs. Beeton with the United States Department of the Treasury. We treat this particular account as an "account" within the meaning of Code § 6.1-125.1(1) under the law of this case as presented by the parties.[1]

Under Title 6.1 of the Code, a determination of the ownership of a P.O.D. account, in which there was a sole original payee and one P.O.D. payee, is made with reference to the date of death of the original payee. See Code § 6.1-125.5(B)(2); Jampol v. Farmer, 259 Va. 53, 58, 524 S.E.2d 436, 439 (2000). One who challenges the intent expressed in the form of a P.O.D. account as it existed on the date of death of an original payee has the burden of proving a contrary intent. See id. at 59, 524 S.E.2d at 439.

---

[1] The parties presented this case at trial and on appeal under the statutory framework of Title 6.1 of the Code, and neither the parties nor the trial court considered provisions of federal law relating to the ownership of a Treasury Direct account or of securities held in such an account. See, e.g., 31 C.F.R. § 357.22(c) (2001). Therefore, the provisions of Title 6.1 have become the law of the case. We also note that the facts presented here are unlike those considered in Bennett v. First & Merchs. Nat'l. Bank, 233 Va. 355, 360, 355 S.E.2d 888, 890-91 (1987). There, we held that a certain Treasury Bill was not an "account" within the meaning of Code § 6.1-125.1, because the Bill was purchased by a bank as the agent of a depositor and was an obligation owed to the bank, not to the depositor of the bank. Thus, unlike the present case, the depositor's contract of deposit in Bennett was solely with the bank and did not invovle a contractual relationship with the Department of Treasury. Id.

8

We therefore address the particular burden of proof that must be met to overcome the intent expressed by the form of an account. In cases involving joint accounts and P.O.D. accounts with more than one original payee, Code § 6.1-125.5 requires that a party challenging the form of such an account after the death of one of its owners prove a contrary intent by clear and convincing evidence. However, neither Code § 6.1-125.5 nor any other statute addresses the level of proof required to overcome the form of a P.O.D. account having only one original payee, such as the separate account established by Mrs. Beeton.

In the absence of a statutory directive to the contrary, we perceive no basis for assigning a lesser burden of proof when a P.O.D. account has only one original payee, as opposed to an account in which there are multiple payees. Thus, we conclude that the burden of proof required to overcome the intent expressed by the form of a P.O.D. account having a sole original payee is also that of clear and convincing evidence.[2]

---

[2]Our conclusion is consistent with decisions in prior cases in which we have held that persons challenging the validity of certain written instruments have the burden of overcoming the express contents of those instruments by clear and convincing evidence. See, e.g., Knewstep v. Jackson, 259 Va. 263, 269-70, 523 S.E.2d 505, 508-09 (2000); Ayers v. Mosby, 256 Va. 228, 233-34, 504 S.E.2d 845, 847-48 (1998); Gifford v. Dennis, 230 Va. 193, 197-98, 335 S.E.2d 371, 373 (1985); Carter v. Carter, 223 Va. 505, 509, 291 S.E.2d 218, 221 (1982).

In the present case, therefore, the executors had the burden of proving by clear and convincing evidence that Mrs. Beeton had a contrary intent regarding ownership of the separate account than that expressed by the form of the account on the date of her death. We conclude that, as a matter of law, the executors failed to meet this evidentiary burden.

Paul's testimony regarding his conversation with Mrs. Beeton, in which he interchangeably used the words "account" and "bill" in describing Mrs. Beeton's instructions concerning the P.O.D. designation, does not clearly and convincingly establish Mrs. Beeton's intent to place a P.O.D. designation only on the $200,000 Treasury Bill. At best, this testimony is equivocal regarding whether Mrs. Beeton intended to make Paul the P.O.D. beneficiary of the entire separate account or of only the $200,000 Treasury Bill.

We also conclude that the chancellor erred in applying the doctrine of Massie v. Firmstone to Paul's testimony that he thought his mother was referring only to the $200,000 Treasury Bill when she executed the Transaction Request Form. The Massie doctrine is limited to sworn statements of fact within a litigant's own personal knowledge and is based on the premise that a litigant should not be permitted to ask a court to make findings that contradict the litigant's own sworn statements

regarding such facts.  Henderson v. Henderson, 255 Va. 122, 126-27, 495 S.E.2d 496, 499 (1998).

The Massie doctrine does not apply to a litigant's statement of opinion.  See Braden v. Isabell K. Horsley Real Estate, Ltd., 245 Va. 11, 16-17, 425 S.E.2d 481, 484 (1993); Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 55, 419 S.E.2d 627, 629-30 (1992); Charlton v. Craddock-Terry Shoe Corp., 235 Va. 485, 489, 369 S.E.2d 175, 177 (1988).  Paul's testimony at issue was a statement of opinion concerning Mrs. Beeton's inner motivation, rather than a statement of fact within his personal knowledge.  See id.  Thus, this testimony was not binding evidence of Mrs. Beeton's intent.  Because the executors failed to establish their claim of a contrary intent by clear and convincing evidence, we hold that the chancellor erred in awarding judgment for the executors on the two disputed Treasury Bills.

We next consider the executors' assignment of cross-error that the chancellor erred in holding that Paul was the owner of the Community National CD.  The executors agree with the chancellor's determination that the 1997 certificate was null and void because Paul lacked any ownership interest in the account at the time he attempted to change its form.  However, the executors argue that the 1996 certificate became invalid when Paul obtained the new certificate in March 1997 and, thus,

11

that the assets held in that account did not pass to Paul in a non-testamentary manner and belong to the estate.  We disagree with the executors' arguments.

Initially, we agree that the 1997 certificate was null and void.  A certificate of deposit is an "account," as defined by Code § 6.1-125.1(1).  Only a "party" to an account may give a written order to a financial institution to change the form of the account or vary the terms of payment under that account.  Code § 6.1-125.6.

As the P.O.D. payee of the account established by the Community National CD in 1996, Paul could qualify as a "party" to that account only after it became payable to him by reason of his surviving Mrs. Beeton, the original payee of the account.  Code § 6.1-125.1(7).  Therefore, in March 1997, when Mrs. Beeton was still alive, the account established by the 1996 certificate still belonged solely to her as the original payee of the account, and Paul did not have the legal right to effect a change in the form of that account.  See Code §§ 6.1-125.3(B) and -125.6.

Because Paul's actions in March 1997 were null and void, the Community National CD issued in 1996, which designated Paul as the P.O.D. beneficiary, remained in effect at Mrs. Beeton's death.  Thus, we conclude that the chancellor did not err in awarding the assets held in that account to Paul.

For these reasons, we will affirm that portion of the chancellor's decree awarding to Paul the assets in the account established by the Community National CD.  We will reverse that portion of the decree concerning the two disputed Treasury Bills and remand the case to the chancellor for entry of final judgment in favor of Paul in the amount of those Bills and the interest accrued on them.

Affirmed in part and final judgment, reversed in part and remanded.