COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


HELEN M. KEARNEY

                                                   MEMORANDUM OPINION* BY
v.        Record No. 2038-04-4                     JUDGE JAMES W. BENTON, JR.
                                                       SEPTEMBER 13, 2005
RICHARD V. KEARNEY



                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                David T. Stitt, Judge

          Gregory L. Murphy (Stacey L. Papp; Vorys, Sater, Seymour &
          Pease LLP, on briefs), for appellant.

          David D. Masterman (Jeffrey S. Thiebert; Masterman & Graham,
          P.C., on brief), for appellee.


        This is a domestic relations proceeding in which the parties appeal the trial judge's rulings

concerning the distribution of their property and spousal support. Helen M. Kearney contends the

trial judge erred in denying her claims for a survivor benefit under an annuity and for spousal

support. Richard V. Kearney contends the trial judge erred in ruling that monies he gave to his wife

were gifts, not loans, and in determining the division of equity in the marital residence. For the

reasons that follow, we affirm the rulings.

                                              I.

        This appeal arises from a decree divorcing the parties after their second marriage to each

other. Their first marriage was terminated by a decree of divorce on March 27, 1980. That decree

"affirmed, ratified, and incorporated" a property settlement agreement between the parties dated

November 13, 1979.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Several years after the divorce, the parties lived together in Virginia for about three years. In 1989, the husband moved to Florida where he had purchased a condominium. In July 1993, the parties married for the second time. During the marriage, the husband resided in his Florida condominium six months of the year and with the wife in Virginia the other six months. The wife filed a bill of complaint for divorce in October 2002.

At the conclusion of the evidentiary hearings, the trial judge entered a decree granting a divorce on the ground that the parties lived apart for one year. Code § 20-91(9). The trial judge found that the wife was not entitled to receive a survivor annuity or damages for not receiving a survivor annuity under the husband's civil service retirement, found that the wife was not entitled to spousal support, found that funds the husband claimed as loans to the wife were gifts, and found that the funds the parties received from the sale of a property distributed during the first divorce should be equally divided. The parties appeal each of these rulings.

II.

The husband initially contends the wife has "waived her right to appeal." He argues that, after the decree was entered and the record was prepared in this case, the wife "made demand, received, and accepted a net payment of $16,120 in enforcement of [benefits she received under] paragraph 3(A) of the Final Decree of Divorce." This paragraph of the decree awarded the wife one half of the escrow account from the sale of the property that was divided during the first divorce.

The wife responds that the check for $16,120 that she received from the husband came in response to her request for payment of the $20,000 attorney fees that she was awarded in paragraph 5 of the final decree. She represents that the check was accompanied by "a letter containing an unsupported assertion that cashing the check would result in a waiver of [her] right to appeal." She also represents that because of this "threat" she refrained from cashing the check and requested the husband's attorney to provide some authority to support this threat of waiver.

We note that the final decree does in fact award the wife $20,000 in attorney fees and that her allegations, if true, suggest unseemly conduct was employed to deter her appeal. In any event, however, the husband has failed to provide any record support for his claim of waiver. We, therefore, address the merits of the appeal.

III.

The wife contends the trial judge erred in finding she was not entitled to a survivor annuity under the husband's civil service retirement plan. The husband argues that the property settlement agreement from the first marriage controlled his obligation regarding the retirement plan and that the trial judge correctly applied the terms of that agreement.

The evidence proved that the decree of divorce dissolving the parties' first marriage in 1980 incorporated by reference the parties' 1979 property settlement agreement. That agreement contained no provision dividing or otherwise disposing of the husband's civil service retirement plan. It did contain, however, a general release of marital rights and a provision that the "parties hereby forever release and surrender all their right, title and interest, whether marital or otherwise, and to the . . . property now owned or hereafter acquired by the other party." An amendment to the agreement provided as follows:

> [The husband] shall keep in full force and effect, [the wife's] current entitlement to her survivors annuity under [the husband's] civil service retirement program. However, if after their divorce becomes final, this cannot be accomplished under civil service regulations or otherwise, [the husband] shall have no further obligation in this regard.

The evidence proved that in 1977, the husband retired early from his federal employment. At that time, the wife was listed as a beneficiary. The husband testified that, at their divorce in 1980, "she was not eligible" for a survivor annuity election. He testified that he could not make a survivor annuity election for his wife.

- 3 -

The wife contends, however, that five years after the first divorce she became eligible for a survivor benefit as a former wife under the Civil Service Retirement Spouse Equity Act of 1984. See 5 C.F.R. §§ 831.621 and 831.622. The wife argues that the husband violated the provision of the 1979 amended agreement (providing that the husband "shall keep in full force and effect, [the wife's] current entitlement to her survivor's annuity under [the husband's] civil service retirement program") because he failed to name her as beneficiary when he was able to do so five years after the divorce. The trial judge ruled that "given the language in the 1979 [amended agreement], after the 1980 divorce, [the husband] no longer had the ability to maintain the survivor annuity benefits, and he had no obligation to go out and create another one." We agree with the trial judge.

Our standard of review is well established:

> We review the terms of an agreement *de novo*. See Smith [v. Smith], 3 Va. App. [510,] 513, 351 S.E.2d [593,] 595 [(1986)] ("[W]e are not bound by the trial court's conclusions as to the construction of the disputed provisions.").
>
> Virginia adheres to the "plain meaning" rule courts examine the plain language of an agreement, going beyond the written contract only when its meaning is ambiguous. See Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678-79 (2002); Douglas v. Hammett, 28 Va. App. 517, 524-25, 507 S.E.2d 98, 101 (1998); Tiffany v. Tiffany, 1 Va. App. 11, 15-16, 332 S.E.2d 796, 799 (1985). Courts shall not include or ignore words to change the plain meaning of the agreement. Southerland v. Estate of Southerland, 249 Va. 584, 590, 457 S.E.2d 375, 378 (1995).

Shenk v. Shenk, 39 Va. App. 161, 173-74, 571 S.E.2d 896, 903 (2002).

The amendment to the agreement required the husband to keep the *current* survivor's annuity in full force and effect. The language describing a "current" annuity is plain. The following language is equally plain: "[I]f after their divorce becomes final, [continuing the annuity] cannot be accomplished under civil service regulations or otherwise, [the husband] shall have no further obligation in this regard." The impossibility of keeping the wife's annuity upon

- 4 -

the first divorce extinguished the husband's obligation. The broadly worded provision in the agreement released the husband from all obligations to apply for further annuity payments for the wife; thus, the change in the law could not have created a new obligation. We do not agree with the wife that the husband's attempt to accommodate her in 1987 was evidence that the obligation continued or that it was evidence of his understanding that the obligation under the original property agreement continued. We hold, therefore, that the trial judge did not err in ruling that the husband abided by the terms of the agreement and had no continuing obligation to the wife.

IV.

The wife also contends the trial judge erred in holding that she was not entitled to spousal support.

The evidence proved that the 1979 agreement, which was incorporated by reference into the first decree of divorce between the parties, contained the wife's waiver of spousal support. The final decree ruled "that the parties waived spousal support pursuant to the resolution of the issues in their first marriage; accordingly, neither party is entitled to spousal support." Among other arguments, the husband contended the waiver survived the parties' second marriage. The wife responded that the second marriage was a reconciliation of their pre-divorce relationship and that under Yeich v. Yeich, 11 Va. App. 509, 513, 399 S.E.2d 170, 172-73 (1990), the "agreement to waive spousal support was abrogated by the parties."

Although the wife raises an interesting legal question, we need not address it because the trial judge ruled that the particular circumstances of this case did not warrant a current award of spousal support. We quote a brief portion of this finding:

> [E]ven assuming, for purposes of argument, that the second marriage constituted a reconciliation, I just don't believe an award of spousal support under these circumstances is appropriate.
>
> I've looked at the factors, including earning capacity, obligations, needs, and financial resources, but this is kind of an

unusual arrangement between these folks. And considering all of the factors, including standard of living, the duration of the second marriage, which wasn't that long, and they really didn't spend that much time together during the second marriage -- I've considered their age, physical and medical condition, contributions they've made to the well-being of the family with property interests of both of the parties. The parties really did not do much during the second marriage to combine or commingle their finances and, again, spent not a whole lot of time together.

[The wife] always lived a relatively frugal life. There's nothing about the standard of living during the second marriage that raised any particular flags.

I just think, even assuming that you could say that a second marriage was a reconciliation, that there's no basis for an award of spousal support presented by these facts.

Viewed in the light most favorable to the husband, who prevailed at trial on this issue, Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002), the evidence in the record supports these findings. The trial judge gave careful and substantial consideration to all the statutory factors, and he concluded that the evidence did not warrant an award of spousal support. Upon our review of the evidence, we cannot say that the judge's findings and conclusions are not supported or that he abused his discretion. We cannot "substitute our judgment as to the proper conclusion to be drawn from the evidence for those reached by the [judge]." Thomasson v. Thomasson, 225 Va. 394, 399, 302 S.E.2d 63, 66 (1983). We, therefore, affirm the ruling regarding spousal support.

V.

The husband presents the additional issue whether the trial judge erred in characterizing his pre-marriage payments of $85,000 to the wife as gifts, rather than loans.

The facts are not disputed. Before the parties remarried and while they were living together, the husband sent the wife three checks. In December 1991, the husband learned from the son that the wife was destitute and could not afford a dress for the son's wedding. In

response, and unsolicited from the wife, the husband sent her a check in the amount of $10,000. On the memo section of the check, the husband wrote the word "loan." The husband testified that his intention at the time was that if the wife received money, "i.e., from the sale of the house—the loan would be paid back." In a note accompanying the check, he wrote:

> Understand you have fallen on hard times. You should have called. The enclosed is a loan—no strings attached.

The wife wrote back, "Loan my ass!," referring to the check.

Five months later, the husband sent the wife a second check for $5,000. The letter accompanying the check stated:

> Everyone can use additional funds to get out of town.
> Don't worry, same rules apply: it goes on your account.

The husband testified that "same rules apply" meant that no one was to know about the transfer. The wife returned the letter, upon which she again had written, "LOAN MY ASS!!"

In November 1992, the husband sent the wife a third check in the amount of $5,000. Neither of the parties testified why the husband sent the check or for what purpose the money was used.

The last and most substantial of the payments the husband made to the wife was a transfer made in January 1993 to the wife's bank in the amount of $65,000. The wife testified that the purpose of the transfer was "to repay [her] sister for money that [she] had borrowed." The husband testified that he and the wife thought requesting the money was "an abominable thing to do, particularly on Christmas Eve," so he "lent her the $65,000 in order to pay off the brother in law so that nonsense would stop." The wife testified that the husband gave her funds shortly before their remarriage as "a generous act of kindness."

The son testified to a conversation between the husband and wife after the marriage regarding the money.

I believe my father said, "Oh, now you have got money. Now you can pay me back," at which point – my mom was in the kitchen – she became somewhat outraged at that and said, "Loan my ass," was her response, to which my father said, "Only kidding. Lighten up. Only kidding."

The evidence further proved that on one occasion the husband loaned the son $16,000, and required the son to sign a promissory note that contained a comprehensive schedule for repayment with a specified interest amount.

The law of gifts is well settled in Virginia. "'[T]he law does not presume a gift and where a donee claims title to personal property by virtue of a gift inter vivos, the burden of proof rests upon him to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence.'" Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003) (citation omitted). Thus, "[w]hether or not a gift has been made is dependent upon the facts and circumstances of the particular case." Grace v. Virginia Trust Co., 150 Va. 56, 66, 142 S.E. 378, 381 (1928).

The trial judge found that the payments were gifts and not loans and found the issue to be "fairly close."[1] We believe that the trial judge did not err in finding that the monies were gifts. The wife never solicited the husband for this money. Although the husband had written "loan" on the checks, the parties never discussed terms for repayment or a written agreement or promissory note as the husband had required when he loaned money to his son. After the wife's repudiation ("Loan my ass!") when she received the first check, the husband continued to send other money she had not solicited. Furthermore, after he asked the wife for repayment of monies during the marriage, the husband responded that he was "just kidding" when the wife expressed

---

[1] We note that neither party argued these funds were not marital debts even though they were paid and received prior to the marriage. Because the trial judge decided these issues without objection, we consider the rulings to be law of the case. See Beeton v. Beeton, 263 Va. 329, 335 n.1, 559 S.E.2d 663, 667 n.1 (2002) (noting that the trial judge's decision on an issue presented by the parties becomes the law of the case when unchallenged).

outrage. The evidence thus supports the finding that the husband apparently also viewed the money as gifts. We hold that the judge did not err in finding that these payments were gifts.

VI.

The husband further contends the trial judge erred in ruling that the proceeds from the sale of the marital home should be equally distributed. We hold this issue lacks merit.

The evidence proved that the husband and wife owned the residence as tenants in common -- it was determined to be marital property in the first divorce and distributed to the parties by the divorce decree ending the first marriage. The husband argued that he was entitled to an additional $500,000 from the sale of the home (it sold for $1,650,000) because he was solely responsible for this increase in its value due to subdividing the property.

The trial judge found that the evidence failed to prove the husband's monetary or non-monetary efforts increased the property's value. In particular, he found "that . . . most of the heavy lifting was done by professionals," that the wife's efforts were just as instrumental, and that the parties "were both involved in it."

On appeal, we will not overturn a trial judge's decision decreeing as to the property of the parties in a divorce absent a showing of an abuse of discretion. Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 490 (2005); von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997). The record established that the trial judge gave careful and substantial consideration to proof of the husband's efforts, the proof of the wife's efforts, and the work of the attorney who handled the project. We hold that the evidence in the record supports the trial judge's findings and decision to equally distribute the funds.

VII.

We deny the requests by both parties for attorney fees in connection with this appeal. We further direct that the cost of the appeal be equally shared.

For these reasons, we affirm the judgment.

Affirmed.